Mr. Chief Justice ShaRKet
delivered the opinion of the court.
The only question presented for the consideration of this court is, whether the personal property of a deceased debtor, in the hands of a distributee, after distribution made, is liable to the satisfaction of a judgment obtained against the administrator.
The bill of the complainant states that sometime in the year 1822, Nancy Pool and Bluford Brooks became the administratrix and administrator of the goods and chattels of William Brooks, the father of the complainants, and' as such received a large amount of personal property. That in 1824, Nazra Pool, the guardian of complainants, who had also intermarried with their *208 mother, who was the administratrix, obtained an order for a division of the property amongst the distributees, which was accordingly divided, or a certain part of it, and their guardian removed with his wards and their property to the state of Louisiana, where they remained until the year 1830, when they returned with their property to Wilkinson county, having previously chosen other guardians. In 18S5, Samuel W. Lewis, the defendant, obtained his judgment, in the circuit court of Wilkinson county, against the administrators of William Brooks’s estate, and in 1S30, had his execution levied on the negroes which had been set apart to complainants. It is also alleged in the bill, complainants offered to show other property belonging to the estate which was liable to the execution, and desired the defendant to have it levied on instead of their property. This allegation, however, if at all material, is wholly denied by the answer, and not sustained by any proof. There are some other allegations in the bill, not deemed material. By an exhibit accompanying the answer, it appears that the administrator sold á part of the property in 1824. And it is averred that this, together with the amount divided, comprised the principal part of the personal estate.
The act of distribution, and the rights acquired under it, appear as the main ground on which the complainants claim an exemption of their property from the execution. Certainly the property was originally liable in the hands of the administrators for the payment of all just debts. Such a liability is expressly declared by the 52d section of the orphans’ court law. The administrator is not bound to make distribution until the debts are paid. It is true that by virtue of the 91st section of the same law, .any person entitled to distribution may apply for it at any time after the expiration of twelve months from the grant of administration. But the administrator has an opportunity of resisting the application, which it is his duty to do, if there are outstanding debts; nor is he bound at any time to make distribution without a bond to refund. The law does not contemplate a distribution until the debts are paid, and if it should be made sooner than required or justified, the claims of creditors could not thereby be destroyed. The 52d section creates a general liability as to all the personal property for the payment of just debts, and *209 declares that, “after the payment thereof,” the surplus shall be distributed amongst those entitled to receive it. This section must be taken in connection with the 91st. The one with a view to the protection of creditors makes the estate first chargeable with the payment of debts, and declares that only the remainder shall be distributed after the settlement of the debts, and the other points out the time and mode for obtaining the division of that remainder, but in prescribing the time, has not in the least changed or destroyed the first general provision in favor of creditors. The language used is, that the distributee may petition for a division, &c., which gives him the right to do so, but there is nothing which gives him a right to demand his portion, or compels the administrator to set it off to him, until the primary object of the law, to wit, the payment of debts, has been performed. It appears to me entirely immaterial whether the distribution was made by order of the orphans’ court, or whether it was voluntary on the part of the administrator; neither could divest the right of creditors. To say that either would destroy the liability created by law, would be giving to administrators the power to place the property of their intestates beyond the reach of creditors, as it is easy for them to make voluntary distribution, or connive at and submit to, without making a proper showing, an order of the orphans’ court for that purpose.
I do not think the creditor’s right of action on the administration bond and solvency of the surety as set up in a bill, varies the case in the slightest degree. It may be true that he could have resorted to a suit on the bond for mal-administration, but I do not think he was bound to do so while there was property ' subject to his execution.
The distributees may have the same right to an action on the bond.
The decree dissolving the injunction must be sustained.